PAUL B. SNYDER
United States Bankruptcy Judge
1717 Pacific Ave, Suite 2209
Tacoma, WA 98402

✓ FILED
___ LODGED
___ RECEIVED

**June 20, 2007**

MARK L. HATCHER
CLERK U.S. BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA
_____ DEPUTY

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF WASHINGTON AT TACOMA**

| | |
|---|---|
| In re:<br><br>CARL VINCENT MASON and DONNA MARY MASON,<br><br>Debtors. | Case No. 06-40672 |
| WASHOUGAL DEVELOPMENT CORP., a Washington Corporation, and JACK C.D. LEE,<br><br>Plaintiffs,<br><br>v.<br><br>CARL VINCENT MASON and DONNA MARY MASON,<br><br>Defendants. | Adversary No. 06-4145<br><br>**MEMORANDUM DECISION**<br><br>**NOT FOR PUBLICATION** |

Trial in this matter was held on June 6, 2007. In accordance with the adversary complaint, Washougal Development Corp. and Jack C.D. Lee (Plaintiffs) seek to have the debt owed to them by Carl Vincent Mason and Donna Mary Mason (Defendants) declared nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) and (B), (a)(4), and (a)(6). At the commencement of the trial, the Court denied without prejudice the Defendants' motion to amend their answer to assert a counterclaim. The Defendants also asserted that the

MEMORANDUM DECISION - 1

doctrines of res judicata and/or collateral estoppel applied to this proceeding. The Court concludes that neither claim nor issue preclusion apply by virtue of the earlier arbitration decision, as the Defendants failed to establish that the arbitration hearing adjudicated issues, other than the amount of damages, raised by the Plaintiffs in their complaint before this Court.

There has been no evidence provided indicating that Donna Mason participated in the alleged fraudulent acts; accordingly, she is entitled to a directed verdict dismissing all claims against her.

Prior to the commencement of trial, the Plaintiff requested that the Court deem as admitted the Admissions contained in the Plaintiffs' First Discovery Requests to Defendants. No request was made by Defendants' counsel to withdraw the Admissions; accordingly, pursuant to Fed. R. Bankr. P. 7036, the Admissions contained in Plaintiffs' Exhibit P-18 are deemed admitted.

Based on the evidence, testimony and arguments presented at trial, the Court's findings of fact and conclusions of law are as follows:

## FINDINGS OF FACT

The Plaintiffs and Carl Vincent Mason (Defendant) were engaged in the business of real estate development and financing. They commenced doing business together in 2001, through a limited liability company, WMDC, LLC (WMDC), and for several years engaged in a substantial number of joint ventures concerning the purchase, sale and development of real estate. Plaintiff Washougal Development Corporation and Defendant, through his wholly owned MDC-I, LLC (MDC-I), participated equally as members of WMDC. The managers of WMDC were both Plaintiff Jack C.D. Lee (Lee) and the Defendant. There is no indication in the record before this Court that Donna Mason was involved in any transaction with the

MEMORANDUM DECISION - 2

Plaintiffs. On June 9, 2004, the parties agreed to two loans to MDC-I from WMDC (Loans), evidenced in the form of two promissory notes (Notes) in the amounts of $270,000 and $92,112.79. The Defendant executed the Notes as President of Madevco, Inc. (Madevco), another of Defendant's wholly owned entities whose license had previously expired in November, 2003. From the Notes it appears that Madevco was to provide collateral for the Loans within 30 days.

Despite Plaintiffs' demands for collateral, security was not provided by the Defendant. The required interest only Note payments were never made, and the Notes went immediately into default. Subsequently, the Plaintiffs brought an action in Clark County Superior Court to recover their monetary damage and for dissolution of WMDC. The Defendants counterclaimed. On Defendants' motion, the case was referred to arbitration, and WMDC was dissolved by an Arbitration Award dated November 9, 2005. The Arbitrator also awarded Plaintiffs $510,933.24 against the Defendants (Judgment), which was affirmed on appeal. The Defendants filed the underlying Chapter 7 bankruptcy case on April 7, 2006. This Adversary Proceeding was timely filed seeking a judgment declaring the Judgment nondischargeable pursuant to 11 U.S.C. §523(a)(2)(A) and (B), (4), and (6).

## CONCLUSIONS OF LAW

Creditors alleging nondischargeability under 11 U.S.C. § 523 have the burden of proof of each element by preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 287-288, 111 S. Ct. 654, 659-660 (1991).

**11 U.S.C. § 523(a)(2)(A)**

To establish nondischargeability under 11 U.S.C. § 523(a)(2)(A), a creditor must demonstrate by a preponderance of the evidence each of the following five elements:

MEMORANDUM DECISION - 3

"(1) misrepresentation, fraudulent omission, or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of his statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct." Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman), 234 F.3d 1081, 1085 (9th Cir. 2000) (citing American Express Travel Related Servs. Co. v. Hashemi (In re Hashemi), 104 F.3d 1122, 1125 (9th Cir. 1996); Citibank (South Dakota), N.A. v. Eashai (In re Eashai), 87 F.3d 1082, 1086 (9th Cir.1996)). A creditor need only justifiably rely on representations by a defendant. Field v. Mans, 516 U.S. 59, 74-5, 116 S. Ct. 437, 446 (1995).

Considering the evidence presented at trial, including the Admissions, the Loans were made to one corporation controlled by the Defendant, but the Notes were signed by a different corporation controlled by the Defendant, whose license was suspended at that time. The evidence and Admissions further establish that as of the date of the Loans, the Defendant was aware MDC-1 and Madevco did not have the present ability to repay or collateralize the Loans. The failure to repay the Notes gave rise to a breach of contract and the substantial judgment rendered by the Arbitrator in favor of the Plaintiffs.

The evidence presented by Exhibit P-13, however, acknowledges that the Plaintiffs were not looking only to the assets of the Defendant's companies for payment of the Notes, and as presented in Exhibits P-1 and P-2, the Notes did not require that the proceeds be used for any particular purpose, or that the collateralization or payment of the Notes be made by MDC-I. The Plaintiffs were also aware that the Defendant intermittently moved money around his several corporations as needed. (Exhibit P-13). The Defendant's testimony, supported by Exhibits P-13 and P-14, further indicates that the Defendant did attempt to provide security in

MEMORANDUM DECISION - 4

the middle of July, 2004, when the parties discussed a 22-unit apartment complex as providing a source of collateral, although for it to have worked would have required additional cash or collateral.

The Court finds credible the Defendant's testimony that although he did not have the assets in Madevco or MDC-1 currently available to make the Note payments or provide collateral, he had the requisite intent to make the Note payments and provide collateral as required in the future. There has been no evidence presented that the Defendant's other wholly controlled entities were insolvent. Additionally, it has not been established that at the time of the Loans, he would not have personally guaranteed the Notes or pledged what other assets he had available to make the Note payments or provide collateral.

The Plaintiffs had been doing business with the Defendant for several years and were aware of the Defendant's haphazard manner of conducting business. Nonetheless, Lee completely relied on the Defendant having the money and collateral available within 30 days without doing any investigation of the Defendant's assets or present ability to perform. Even a cursory investigation would have led to the conclusion that Madevco's license had expired. Furthermore, prior to entering into the Loans, the Plaintiff did not require as a condition of the Loans that the assets of the related Defendant's entities be pledged or the personal guarantee of the Defendant, notwithstanding that their business relationship had admittedly began to sour. No inquiry was made as to what collateral would be pledged, who would pledge it, or how the funds would be used. Lee is a sophisticated businessman. The Court concludes that the Plaintiffs' reliance on the Defendant's representations, without doing one iota of due diligence, was not justifiable in these circumstances. Further, the Court concludes that at the

time the Defendant entered into the Loans, he did not have the requisite fraudulent intent or an intent to deceive.

**11 U.S.C. § 523(a)(2)(B)**

The requirements for a creditor to establish a cause of action under 11 U.S.C. § 523(a)(2)(B) are use the of a written statement that is (1) materially false, (2) representing the debtor's financial condition, (3) upon which the creditor reasonably relied, and (4) that the debtor caused to be made with intent to deceive.

In the instant case, the Plaintiffs assert that the mere written statement that collateral would be furnished within 30 days satisfies these statutory requirements. The Court concludes, however, that the statement does not concern the Defendant's financial condition, only that collateral for the loans would be obtained within a 30-day period. Furthermore, the Defendant's testimony as to his intent is found to be credible, and the Plaintiff is not found to have reasonably relied on the Defendant's representations as more fully described above. The Court concludes that a preponderance of the evidence fails to establish that the Defendant had an intent to deceive at the time that the Defendant agreed to provide collateral, that a false written representation as to the Defendant's financial condition was made, or that the Plaintiff justifiably relied on representations made by the Defendant. Accordingly, the elements of § 523(a)(2)(B) have not been met.

**11 U.S.C. § 523(a)(4)**

11 U.S.C. § 523(a)(4) excepts from discharge any debt resulting from fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny. The broad general definition of a fiduciary–a relationship involving confidence, trust, and good faith-does not apply in the dischargeability context, thereby excluding ordinary commercial relationships from

the reach of § 523(a)(4). Lewis v. Short (In re Short), 818 F.2d 693, 695 (9th Cir. 1987). Implied or constructive trusts and trusts ex maleficio also do not create the fiduciary relationship required by § 523(a)(4). Short, 818 F.2d at 695. The required fiduciary relationship must arise from an express or technical trust that was imposed without reference to the wrongdoing that caused the debt. Scott v. Lewis (In re Lewis), 97 F.3d 1182, 1185 (9th Cir. 1996).

The evidence is clear, and the Plaintiffs did not argue that either a technical or statutory trust was created. Nor did the Plaintiffs cite to a statute that would provide for a technical trust in this situation. The only "fiduciary" language indicated by the Plaintiffs is contained in section 7.6 of the WMDC Limited Liability Company Agreement (Exhibit P-10). This contains general good faith language normally used in commercial business relationships concerning the obligation of both parties toward each other and to WMDC.

This language does not create a statutory, technical or express trust. Further, there is no indication that the Defendant breached this duty of good faith, other than possibly failing to provide security for the Loans. It can just as easily be said that the Plaintiffs would have breached this duty by not first investigating whether there was sufficient collateral to secure the Loans, before agreeing to the Loans. Accordingly, the Plaintiffs have not met their burden of proof on this cause of action as required by 11 U.S.C. § 523(a)(4).

**11 U.S.C. § 523(a)(6)**

11 U.S.C. § 523(a)(6) excepts from discharge debts resulting from "willful and malicious injury by the debtor to another entity or to the property of another entity." What constitutes a "willful and malicious injury" has been clarified by the U.S. Supreme Court to mean a "deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury."

MEMORANDUM DECISION - 7

Kawaauhau v. Geiger (In re Geiger), 523 U.S. 57, 61, 118 S. Ct. 974, 977 (1998). The willful injury requirement "is met when it is shown either that the debtor had a subjective motive to inflict the injury *or* that the debtor believed that injury was substantially certain to occur as a result of his conduct." Petralia v. Jercich (In re Jercich), 238 F.3d 1202, 1208 (9th Cir. 2001). A malicious injury involves "(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse." Jercich, 238 F.2d at 1209 (quoting In re Bammer, 131 F.3d 788, 791 (9th Cir. 1997) (en banc) (quotations omitted)).

For purposes of establishing the willful injury requirement, the Plaintiffs do not assert that the Defendant had a subjective motive to inflict injury. Even if the Court agreed that the Plaintiffs met their burden on the willful injury requirement, the Plaintiffs have not demonstrated by a preponderance of the evidence the *malicious* injury requirement. The evidence presented does not establish that the Defendant *intentionally* failed to provide security for the Loans with an intent to cause harm. The Plaintiffs have not met their burden of proof on this cause of action

This decision is not meant to condone the conduct of the Defendant. The arbitrator clearly found a breach of contract and awarded a substantial judgment in favor of the Plaintiffs. Such a finding by the arbitrator, however, does not satisfy the more rigorous requirements to establish nondischargeability of the Judgment.

DATED: June 20, 2007

*/s/ Paul B. Snyder*
_____
Paul B. Snyder
U.S. Bankruptcy Judge

MEMORANDUM DECISION - 8